USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
NICOLE DER BOGHOSSIAN, ANDRIA L.      :
CONNELL, ERICA BROWNING, ALISHA        :
JNOBAPTISTE, DENISE TEJADA, & RAMI    :
YAZAR, *individually and on behalf of all others* :
*similarly situated,*                               :          24-CV-3007 (VEC)
                                                          :
                                        Plaintiffs,  :          OPINION
                                                          :
              -against-                             :
                                                          :
CAPELLA UNIVERSITY, LLC &            :
STRATEGIC EDUCATION, INC.,             :
                                                          :
                                      Defendants.  :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        Plaintiffs, on behalf of themselves and all others similarly situated, bring a putative class

action against Defendants Capella University, LLC ("Capella") and Strategic Education, Inc.

(collectively, "Defendants") alleging violations of the New York General Business Law

("GBL"), fraud, and negligent misrepresentation in connection with Capella's Doctor of

Psychology ("PsyD") programs.  First Amended Complaint ("FAC"), Dkt. 28.[1]

        Defendants moved to dismiss the FAC in its entirety pursuant to Federal Rule of Civil

Procedure 12(b)(6).  *See* Defs. Mot., Dkt. 34.  Plaintiffs opposed the motion.  *See* Pl. Opp., Dkt.

37.  Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Plaintiffs are

granted leave to amend their fraud claim.

---

[1]        Plaintiffs concede in their opposition that their claim for unjust enrichment is duplicative of other claims.
Pl. Opp. at 2 n.2, Dkt. 37.  Accordingly, that claim is dismissed.

## I.    BACKGROUND[2]

Capella is a private, for-profit, online university owned by Strategic.  FAC ¶¶ 22–23.  In 2004, Capella, which is not and never has been accredited by the American Psychological Association nor registered with the New York State Education Department, began offering a PsyD in Clinical Psychology; in 2012, the university added a PsyD in School Psychology.  *Id*. ¶¶ 25–26.  Plaintiffs enrolled in Capella's PsyD programs between March 2018 and October 2020. *See id*. ¶¶ 91, 99, 107, 115, 123, 131.[3]

Capella operates in New York State under a State Authorization Reciprocity Agreement ("SARA").  *Id*. ¶¶ 71–72.  SARA allows participating institutions to offer online education courses and programs in SARA-participating states without seeking state authorization, provided the institution complies with SARA's regulations.  *Id*. ¶¶ 68–71.  For programs that potentially lead to professional licensing, SARA requires institutions to keep all individuals who inquire about a program informed as to whether successful completion will meet state licensing requirements.  *Id*. ¶ 77.

To practice clinical psychology in New York, a doctoral candidate must complete the required coursework as well as two years of full-time supervised clinical training.  *Id*. ¶ 29.  For PsyD candidates to be authorized to practice as psychology interns or trainees in New York, they

---

[2]    The well-pled facts alleged in the FAC are assumed true for purposes of evaluating Defendants' motion to dismiss.  *See Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014).  The facts are taken from the FAC and any documents incorporated by reference.

[3]    Capella applicants must sign a "Licensure Disclosure & Responsibilities Acknowledgment" form that states, "Applicants must understand that Capella University makes no representation, warranty, or guarantee that successful completion of the degree or certificate program will permit or guarantee that a state board or licensing agency will accept a graduate's application for licensure."  FAC  ¶ 79.  The form also states, "Learners are solely responsible for determining and complying with the licensure or certification requirements of the state, local or professional board or organization."  *Id*.  Finally, the form provides that "if [an applicant] [is] unable to secure an appropriate practicum or internship site that meets program requirements, [the applicant] will make no claim and take no action against Capella University."  *Id*. ¶ 81.

generally must be participating in training as part of a State-registered or approved doctoral program in psychology. *Id*. ¶ 6. At Cappella, PsyD candidates perform their clinical training in two phases: a one-year supervised "practicum" consisting of 1,000 hours, followed by a one-year "pre-doctoral internship" consisting of 2,000 hours. *Id*. ¶ 4. Because its psychology programs are not accredited, Capella relied on a provision of the New York Education Law that was first introduced in 2002 and later codified in 2018; that provision permitted students of unaccredited programs to complete their clinical training in New York, so long as they did so in a State or local government-funded program or service (the "Exemption").[4] *Id*. ¶¶ 9, 34–35.

Relying on the Exemption, Defendants advertised that Capella's PsyD in Clinical Psychology program "features online coursework and face-to-face experiences, both designed to help [students] pursue licensure." *Id*. ¶ 46. Defendants also advertised that students in the PsyD program would "apply [their] skills and knowledge with direct client contact and supervision, in both a part-time practicum and a full-time internship." *Id*. ¶ 53. Defendants' agents, including administrators, advisors, counselors, and professors, informed Plaintiffs prior to enrollment and during their studies that "Capella's PsyD program [was] designed to prepare learners for license as [a] Licensed Psychologist." *See id*. ¶¶ 92, 100, 108, 116, 124. They also advised that Plaintiffs would be able to perform their clinical training in New York; the only caveat being that the training had to be performed at a site that received state funding. *Id*. ¶ 54. Defendants' agents did not inform Plaintiffs that their ability to obtain clinical training in New York was dependent on the Exemption, that the Exemption was subject to periodic renewal by the New York State Legislature, or that the Exemption could be revoked before Plaintiffs completed all of the clinical training required to seek licensure. *Id*. ¶¶ 36, 55.

---

[4]    New York Education Law had previously permitted PsyD candidates to engage in the practice of psychology as part of their clinical education only if they were being educated in an accredited program. *Id*. ¶ 6.

On June 24, 2021, the New York State Legislature revoked the Exemption, effective June 24, 2022 ("Effective Date"). *Id.* ¶¶ 37–39. That change effectively prohibited Capella students from doing their internship or practicum in New York State after the Effective Date. Defendants did not inform Plaintiffs in 2021 that the Exemption would expire on June 24, 2022. *Id.* ¶ 56. Quite the contrary, the FAC alleges that on June 9, 2022, Dr. Joshua Stanley, a Dean at Capella, held a meeting with faculty and administrators during which he instructed them *not* to inform the New York PsyD candidates that the Exemption had been revoked. *Id.* ¶ 58. Dr. Stanley also told the Directors of Clinical Training for the PsyD programs that if they were asked about the Exemption, they should explain that "the lawyers are working on it" and provide no further information. *Id.* ¶ 59. On April 6, 2023, almost two years after the Exemption was revoked and almost nine months after the Effective Date and after Defendants had collected another two years of tuition and fees from students in its PsyD programs, Capella finally informed its students that they were required to stop their practicums and internships immediately, as they were no longer legally authorized to engage in clinical training in New York. *Id.* ¶ 60.

Since the Effective Date, despite paying tens of thousands of dollars in tuition, PsyD candidates at Capella have been unable to complete the clinical training requirements for licensure in New York State. *Id.* ¶¶ 41–42. When the Exemption was revoked, Plaintiffs had completed all required coursework; the number of practicum hours that Plaintiffs had completed ranged from none, *id.* ¶ 104, to nearly completing the required hours, *id.* ¶ 136. None of the Plaintiffs had begun an internship. *Id.* ¶¶ 95, 103, 112, 119, 128, 135. Plaintiffs have paid

between roughly $50,000 – $150,000 in tuition and fees to Defendants to pursue their PsyD degrees. *See id.* ¶¶ 97, 105, 113, 121, 129, 137.

## DISCUSSION

### II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required to credit "mere conclusory statements," which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555).

Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud, which the FAC does, must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) with respect to the fraud claim. *See, e.g., ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007)). Rule 9(b) demands that "the pleading specify (1) the fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent." *U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017) (citation omitted).

III.    **Defendants' Motion to Dismiss is Granted in Part and Denied in Part**

A.  **Plaintiffs' Consumer Protection Claims**

Plaintiffs claim that Defendants violated Sections 349 (Count I) and 350 (Count II) of the New York General Business Law.  FAC ¶¶ 146–167.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. L. § 349(a).  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  *Id.* § 350. To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (internal quotation marks and citations omitted).  Material omissions may give rise to a claim where "the business alone possesses material information that is relevant to the consumer and fails to provide this information."  *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 20 (1995).  For a challenged act or practice to be considered misleading, it must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id.* at 26.

"To satisfy the 'consumer-oriented' prong, the plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large."  *Manchanda v. Navient Student Loans*, No. 19-CV-5121, 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (citation omitted).  In determining whether a statement is deceptive, courts analyze the challenged material "as a whole, including disclaimers and qualifying language."  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (citation omitted).  "[C]ontext is crucial."  *Fink v. Time Warner*, 714 F.3d 739, 742 (2d Cir. 2013).  *See also Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (citation omitted) ("Courts view each allegedly misleading statement in light of

its context on the product label or advertisement as a whole.")  To satisfy the third prong, the plaintiff must show that the "deceptive act or practice . . . caused actual, although not necessarily pecuniary, harm."  *Oswego*, 85 N.Y.2d at 26.

Plaintiffs present two theories of deceptive advertising or practice.  Neither is adequate. First, Plaintiffs assert that Defendants did not disclose to applicants prior to enrollment that  the ability of Capella's PsyD candidates to complete their clinical training in New York was dependent on the revocable Exemption.  Pl. Opp. at 9–10.  Plaintiffs contend that Capella "placed the onus on its prospective PsyD candidates" to review all state law requirements; Plaintiffs point out that the New York Education Department's webpage discussing the psychology licensing requirements did not reference the Exemption, its revocability, or Capella's reliance on it.[5]  *Id.* at 10.  As such, Plaintiffs argue that the information that was available to prospective PsyD candidates would not have put a reasonable consumer on notice that Capella relied on a revocable Exemption when making its representations about the availability of clinical training in New York.  *Id.*  For claims based on an alleged omission, a plaintiff must show "either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information."  *Levy v. Hu Prods. LLC*, No. 23-CV-1381, 2024 WL 897495, at *5 (S.D.N.Y. Mar. 1, 2024) (citation omitted).  Plaintiffs insist that they could not have reasonably known that Capella was relying on the Exemption based on publicly-available information; and even if Plaintiffs had known about the Exemption prior to enrollment, the statute's language is "highly technical."  Pl. Opp. at 11.  Plaintiffs argue that it is a question of fact whether a reasonable consumer would be expected to engage in a high-level review and

---

[5]    *See License Requirements for Psychology*, NEW YORK STATE EDUC. DEP'T, https://www.op.nysed.gov/professions/psychology/license-requirements.  The Court presumes that the Plaintiffs intend to refer to the contents at the time they were considering enrolling although the FAC cites only to the current webpage.

analysis to learn of the omission.  *Id.* (citing *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 218–19 (N.D.N.Y. 2023)).

Second, Plaintiffs allege that Defendants affirmatively misrepresented that Capella's PsyD curriculum aligned with New York State's requirements for professional licensing and that Capella students would qualify to perform their clinical training in New York.  *Id.* at 12–13. Plaintiffs claim that Defendants had a duty to disclose publicly "the whole truth" about the Exemption (namely: that it was subject to revocation).  *Id.* at 12.  Plaintiffs argue that an affirmative duty arose because Capella made a partial or ambiguous statement; under New York law, "once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth."  *Id.* at 13 (citing *Innovative Design & Bldg. Servs., LLC v. Arch Ins. Co.*, No. 12-CV-5474, 2014 WL 4770098, at *8 (S.D.N.Y. Sept. 23, 2024)).  Defendants disclosed to Plaintiffs only part of the Exemption, which provided that Plaintiffs would be able to receive their clinical training at New York State-funded training sites, without disclosing that the students' ability to do so could be terminated at any time by the Legislature.  *Id.*

Plaintiffs fail to state GBL claims.  For an omission to constitute deception, Plaintiffs must show "either that the business alone possessed the relevant information, or that a consumer could not reasonably obtain the information."  *Kyszenia v. Ricoh USA, Inc.* 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022) (citation omitted).  Plaintiffs have not adequately alleged either.  New York State's licensure requirements and exemptions from those requirements necessary for clinical education are publicly-available information.  The FAC alleges that Defendants did not disclose that the Exemption was "subject to periodic review and renewal" and "could be repealed."  FAC ¶ 9.  This information was not uniquely known by Defendants but is a fact that is applicable to all statutes.

Plaintiffs argue that a reasonable consumer was not on notice of the revocability of the law because information about the Exemption was not readily available on the webpage "License Requirements for Psychology" of the New York State Education Department.  Pl. Opp. at 10.[6] Although Defendants could have been more forthcoming with their students (and prospective students), they did not possess any unique knowledge about the Exemption that was not publicly available.

As for the alleged affirmative misrepresentations, the FAC does not allege that Defendants knew, at the time they made the alleged misrepresentations, that the Exemption would be revoked before the students who enrolled at Capella in 2020 and before had completed the clinical training required to seek licensure.  FAC ¶ 53.  Plaintiffs enrolled at Capella between 2018 to 2020; thus, the representations purportedly relied on by Plaintiffs were made well before the Exemption was revoked.  *Id.* ¶¶ 91, 99, 107, 115, 123, 131.  Although Defendants knew that they were relying on the Exemption for clinical training of their PsyD students, when they made the complained-of representations, they did not and could not have known that the New York State Legislature would revoke the Exemption, which had been in place for the prior two decades.  *See generally* 2002 N.Y. Sess. Laws ch. 676; 2010 N.Y. Sess. Laws ch. 130; 2013 N.Y. Sess. Laws ch. 57; 2018 N.Y. Sess. Laws ch. 57; 2021 N.Y. Sess. Laws Ch. 159.  Nor do Plaintiffs plead facts that would allow the Court reasonably to infer that Defendants made affirmative representations with no intention of providing the programs described.  At the time Defendants made the complained-of representations, there is no dispute that Capella's PsyD students could participate in required clinical training in New York.  The fact that the Exemption

---

[6]    The Court has no way of determining what the New York State Education Department's webpage included regarding licensing information at the time that Plaintiffs would have visited the website prior to their decision to enroll at Capella, as Plaintiffs cite the website as it existed on September 24, 2024.  Pl. Opp. at 10 ns. 4–6.

was revoked does not retroactively make Defendants' statements misleading or factually incorrect at the time they were made.  Additionally, to the extent that Capella employees made predictive comments to Plaintiffs regarding whether students would be able to complete their practicums in New York or made predictions regarding what the state legislature would do about the Exemption, such "forward-looking statements" are not "material misrepresentations of a presently existing or past fact" and are not actionable.  *See Rostami v. Open Props, Inc.*, No. 22-CV-3326, 2024 WL 1313713, at *3 (S.D.N.Y. Mar. 26, 2024) (citation omitted).

Defendants also rely on the express disclaimers included on Capella's website and catalog as a reason Plaintiffs have not and cannot state these GBL claims.  *See* Decl. of Michael Baughman ("Baughman Decl."), Exs. A, B, Dkt. 36–1, 36–2.  When assessing alleged deceptive business practices, courts view the challenged advertisement "as a whole, including disclaimers and qualifying language," as "[c]ontext is crucial."  *Montgomery v. Stanley Black & Decker, Inc.*, No. 23-735, 2024 WL 939151, at *1 (2d Cir. Mar. 5, 2024).  A disclaimer will not bar a GBL § 349 claim, however, unless it "utterly refutes plaintiff's allegations, and thus establishes a defense as a matter of law."  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 180 (2021) (citations omitted).  Such a disclaimer "must do more than disclaim liability generally; instead, a disclaimer must address the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable consumer would be misled."  *Id.  See also Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, 526 (1st Dep't 2001) (citation omitted) ("[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed . . . .").

Plaintiffs[7] signed Capella's "Licensure Disclosure & Responsibilities Acknowledgement" prior to enrolling.[8]  Baughman Decl. Ex. A.  In that document, Plaintiffs acknowledged that "not all of the organizations that accredit or approve particular programs have granted accreditation or approval to Capella University programs."  *Id.* at 3, 6, 10, 13, 17.  Those forms contained extensive disclaimers that made it clear that Capella was not guaranteeing that its programs would lead to the student being licensed; that it was the student's responsibility to review the licensure requirements for their intended state of licensure; and that Capella took no responsibility for ensuring that the student could obtain an appropriate practicum or internship.  *Id*.  Capella's webpages for each PsyD program also explicitly disclosed[9] that Capella does not "guarantee licensure, certification or endorsement" and that it is the student's "responsibility to understand and comply with requirements for [the student's] state."[10]  Capella's catalog also included a section on licensure, in which Capella again disclosed that it does not "guarantee licensure . . . will be granted" and students are encouraged to "contact the appropriate authorities in their state."  Baughman Decl. Ex. B at 3.  The Court finds that no reasonable

---

[7]    Defendants attached to the Baughman Decl. the licensure acknowledgements signed by each of the Plaintiffs except for Rami Yazar.  Defendants note that "they have no record of anyone by that name ever attending or even applying to a Capella program, let alone of such a person engaging in clinical training at The Center New York Community Center as alleged in the FAC."  Defs. Mem. at 3 n.2, Dkt. 35.

[8]    Although the Court is generally confined to "the allegations contained within the four corners of [the] complaint," *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017), it may consider materials attached to the complaint or incorporated by reference, documents in Plaintiff's possession or of which Plaintiff had knowledge and relied on in bringing suit, as well as matters appropriate for judicial notice, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  The Court can properly consider the forms attached to the Baughman Decl. as Plaintiffs are aware of the waivers they signed upon enrolling at Capella and presumably have copies of them in their possession.

[9]    The FAC includes multiple excerpts from Capella's website taken on April 13, 2024.  FAC ¶¶ 45–48 ns. 9–12.  The Court assumes that the excerpts and disclosures on Capella's website were the same when Plaintiffs visited the website prior to their decision to enroll.

[10]    *PsyD in Clinical Psychology*, CAPELLA UNIV., https://www.capella.edu/online-psychology-degrees/psyd-clinical-psychology/; *PsyD in School Psychology*, CAPELLA UNIV., https://www.capella.edu/online-psychology-degrees/psyd-school-psychology/.

consumer would be misled by the statements about which Plaintiffs complain regarding professional licensure.

Plaintiffs allege that as a participant in federal student aid programs under Title IV of the Higher Education Act[11] ("HEA") and as a SARA[12] member institution, Capella had an affirmative duty to disclose professional licensure eligibility information to students and cannot shift its burden to students by way of its disclaimer.[13]  FAC ¶¶ 73–79.  Plaintiffs allege that Capella's failure to abide by these mandatory obligations evinces its deception and misrepresentation.  Pl. Opp. at 15.

Plaintiffs' GBL claims are not rescued by Plaintiffs' allegations that Defendants violated HEA regulations and SARA policies.  Plaintiffs interpret the HEA regulations and SARA policies far too broadly, as neither has anything to do with a student's ability to perform a practicum or internship at a specific site or in a specific state.[14]  The FAC alleges that Plaintiffs

---

[11]    Under the HEA, if an educational program is designed to meet requirements for a specific professional license or certification, the educational institution must provide students "a list of all States where the institution has determined . . . that the program does and does not meet such requirements."  34 C.F.R. § 668.43(5)(v).

[12]    A member institution of SARA "must keep all students, applicants and potential students who have contacted the Institution about the course or program [that potentially lead(s) to Professional Licensure] informed as to whether successful completion of such offerings would actually meet state licensing or post-licensing requirements."  FAC ¶ 77 (citing SARA Policy Manual, Version 19.2, Section 5.2).

[13]    Plaintiffs argue that Defendants unlawfully shifted their burden to disclose state licensure requirements to students and "hid a purported waiver of liability" at the bottom of the acknowledgement document.  *Id.* ¶¶ 79, 81.  Defendants' waiver, in Plaintiffs' view, is "fraudulent and unenforceable," as Defendants cannot waive their compliance with the HEA and SARA.  Pl. Opp. at 19.  The Court need not address whether Defendants' waiver is legally enforceable, as Defendants have not argued that Plaintiffs waived their ability to bring this lawsuit.  The waivers, however, demonstrate that Defendants provided notice that Plaintiffs were responsible for reviewing their individual academic program and state licensure requirements.  Further, Plaintiffs conflate whether an educational institution can waive its duties under the HEA and SARA with whether Plaintiffs themselves can waive any claim they may have against the educational institution for failing to comply with its responsibilities under HEA and SARA.

[14]    Two of the HEA provisions on which Plaintiffs rely —34 C.F.R. § 668.43(a)(5)(v) and § 668.43(c)— were amended in 2019 and took effect July 1, 2020; only one of the Plaintiffs, JnoBaptiste, enrolled after those regulations went into effect.  Regardless, 34 C.F.R. § 668.43(c) does not rescue JnoBaptiste's GBL claims.  That regulation broadly requires an institution to disclose to prospective students, prior to enrollment, if the program does not meet the state's requirements for licensure or certification in the state in which a prospective student is located.

were unable to complete their clinical practicums and internships in New York; the HEA regulations and SARA policies pertain to disclosure regarding the completion of an academic program that could lead to professional licensure. Plaintiffs claim that these affirmative duties require disclosure of "any potential statutory obstacles to completing program requirements that are essential for licensure," such as the required clinical training. Pl. Opp. at 16. Plaintiffs fail, however, to cite any law or regulation that interprets the disclosure provisions of HEA and SARA to require such an extensive and broad disclosure of information. Further, Plaintiffs maintain the ability to seek licensure in New York after graduation; the revocation of the Exemption only means that they must complete the required clinical training elsewhere.

Accordingly, Defendants' motion to dismiss Counts I and II of the FAC is granted.

### B.  Plaintiffs' Fraud Claim

Count III of the FAC alleges both fraudulent misrepresentation and fraudulent concealment. FAC ¶¶ 168–77. To state a claim for fraud under New York law, the plaintiff must allege, that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)).

The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such

---

JnoBaptise enrolled at Capella in October 2020, which predates the Effective Date. FAC ¶ 99. Thus, at the time she enrolled, Capella had no disclosure obligation under 34 C.F.R. § 668.43(c). 34 C.F.R.§ 668.43(a)(5)(v) requires institutions to make information available to prospective and enrolled students whether an educational program is designed to meet educational requirements for a specific professional license or certification and whether the program meets such requirements. As discussed *infra*, this regulation does not address a student's ability to complete clinical training in a particular state, which is the problem about which Plaintiffs complain.

disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (5) damages. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 582 (2d Cir. 2005) (citation omitted).  New York recognizes a duty to disclose in three circumstances: (1) where the party has made a partial or ambiguous statement; (2) the parties stand in a fiduciary or confidential relationship with each other; and (3) "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted).

Plaintiffs assert that the representations made on Capella's website and catalog, along with the statements made by Defendants' enrollment advisors, academic advisors, and faculty, omitted material information about the revocability of the Exemption.  Pl. Opp. at 21.  Plaintiffs argue that Defendants fraudulently induced them to enroll at Capella by selectively disclosing the portions of the Exemption that permitted its students to fulfill their clinical training at New York State-funded sites without disclosing its potentially evanescent status.  *Id.*  Plaintiffs also point to the alleged statements made by Dr. Joshua Stanley to Capella faculty directing them (one year after the Exemption had been revoked but at about the time the revocation became effective) not to disclose the revocation of the Exemption as evidence of an intent to defraud. FAC ¶¶ 58–59.  Plaintiffs assert that they relied on these alleged misrepresentations and assert that they suffered damages based on their reliance in that they paid tuition for a degree that they are currently unable to complete.  Pl. Opp. at 21–22.

### 1. Fraudulent Misrepresentation Claims

Although the Court is incredibly sympathetic to Plaintiffs' plight,[15] to the extent their fraud claim is premised on statements made prior to their enrollment,[16] it fails for several reasons.  Starting with the representations made prior to Plaintiffs' enrollment, Plaintiffs have not cleared the first hurdle of demonstrating that such statements were materially false when they were made.  Plaintiffs' allegations are nothing more than "fraud by hindsight," which is not permitted.  *In re Kirkland Lake Gold Ltd. Sec. Litig.*, No. 20-CV-4953, 2021 WL 4482151, at *5 (S.D.N.Y. Sept. 30, 2021) (citation omitted).  As noted *supra*, Plaintiffs enrolled at Capella between April 2019 to October 2020 when the Exemption was fully in effect.  FAC ¶¶ 91, 99, 107, 115, 123, 131.  It was not until June 24, 2021, that the New York State Legislature revoked the Exemption.  *Id.* ¶¶ 37–38.  Accordingly, any representations made by Defendants or their agents prior to Plaintiffs' enrollment were not false statements, as the Exemption was in effect.

Plaintiffs' allegations of misrepresentations made while they were enrolled are more compelling but most of Plaintiffs do not adequately allege fraud.  Several Plaintiffs allege statements made by academic mentors to them in which Plaintiffs were told that they would qualify for licensure if they completed their clinical education at a New York State-funded site.  *Id.* ¶¶ 110, 118, 126.  To the extent those statements were made after the Exemption was revoked

---

[15]    Accepting Plaintiffs' allegations as true, it appears that Capella was, at a minimum, not forthcoming with these students about the change in the law and its effect on their ability to complete their clinical education in New York.  It does not take a cynic to conclude that Defendants' profit motive overcame any sense of decency and responsibility to their students that they possess.

[16]    It is not entirely clear whether some of the Plaintiffs are intending to include within their fraud claim statements made after the revocation of the Exemption that may have lulled them into continuing to pay tuition to Capella as they were completing course work.  As discussed below, any such statements may well have been knowingly false and may well support a fraudulent misrepresentation claim or a fraudulent concealment claim on the theory that Capella faculty made misrepresentations, possessed superior knowledge not readily available to the students, and knew that the students were operating on the mistaken understanding that they would be able to complete their education through Capella in New York.

in June 2021, the statements were false.[17]  Regardless of the falsity of such statements, most of those statements are not adequately alleged because they are not pled with the required particularity necessary to meet Rule 9(b)'s heightened pleading standards.  Particularity means "the who, what, when, where, and how."  *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 897 (E.D.N.Y. 2018) (citation omitted).  Some of the allegations fail to allege the timeframe in which the allegedly fraudulent statements were made.  FAC ¶¶ 94, 134.  Other allegations are far too vague as to the timeframe of the statements, noting that statements were made between June 2021 and June 2022.  *Id.* ¶ 110.  Although Browning's allegation regarding a telephone conversation she had on April 22, 2019, with Mr. Haugen, *id*. ¶ 118, meets Rule 9(b)'s standard, the allegation fails to allege fraud because the statement was made prior to the revocation of the Exemption.

The FAC meets Rule 9(b)'s stringent pleading standards and adequately states a claim as to two misrepresentations made by Capella faculty.  JnoBaptiste alleges that in August 2021 and in June 2022 her dissertation mentors, Dr. Rebecca Loehrer and Dr. LaKeita Carter, informed her that she would qualify for New York licensure provided she completed her clinical training at New York State-funded program sites.[18]  *Id.* ¶ 102.  Connell alleges that in August 2021, her dissertation mentor, Dr. LaKeita Carter, told her she would qualify to be licensed in New York so long as she completed her clinical training at a State-funded site.[19]  *Id.* ¶ 126.  Connell also

---

[17]    It does not appear that any of the Plaintiffs was close enough to the end of his or her clinical education that it would have been possible for the student to complete the required hours between the date the Exemption was revoked and the Effective Date.  FAC ¶¶ 96, 104, 112, 120, 128, 136.

[18]    She alleges that Dr. Loehrer made similar representations in June 2021.  *Id.* ¶ 102.  Without a more specific date, the Court is unable to ascertain whether such a statement was materially false, as the Exemption was revoked on June 24, 2021.  *Id.* ¶ 37.

[19]    Connell's allegation that Dr. Weston Edwards made a similar representation regarding Connell's eligibility to become licensed in New York in June 2021 fails for the same JnoBaptiste's does.  *See* n.18, *supra.*

alleges that in August 2021 Capella's Director of Clinical Training, Dr. Ja'Net Howard, told her: "Capella students are able to seek state licensure in New York provided their internship sites are State funded." *Id.* ¶ 126.

Those representations by Capella faculty were made after the Exemption was revoked in June 2021 and were materially false. As for the second element of a fraud claim, as the Court noted in n.15, *supra*, it is reasonable to infer that Capella's intent was to keep its students enrolled and paying tuition regardless of their ability to complete their clinical training in New York. Although some of these representations were made in 2021, the FAC alleges that a Capella dean, Dr. Joshua Stanley, met with the chair of Capella's psychology department and the directors of clinical training on June 9, 2022, and affirmatively advised them *not* to inform PsyD candidates about the revocation of the Exemption and to provide no additional information when asked about it other than to say that "the lawyers are working on it." *Id.* ¶¶ 58–59. Defendants' conscious decision to willfully misrepresent these Plaintiffs' ability to complete their clinical training in New York after the Exemption was revoked demonstrates that Defendants had "motive and opportunity to commit fraud" and is "strong circumstantial evidence of conscious misbehavior or recklessness." *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 703 (S.D.N.Y. 2012) (citation omitted). Connell and JnoBaptiste relied on the statements their advisors made regarding their eligibility for New York licensure and remained enrolled, and Connell was performing her clinical training until she was told in April 2023 that she must stop. FAC ¶¶ 102, 106, 126, 130. Finally, Connell and JnoBaptiste have alleged damage resulting from their reliance on these representations. JnoBaptiste has paid Capella roughly $130,000 in tuition and fees and is unable to complete the required 2,000 hours of clinical training for New York licensure. *Id.* ¶¶ 104–05. Connell has paid Capella approximately $140,000 in tuition and fees

and has completed only 700 of the required 1,000 hours of practicum clinical training.  *Id.* ¶¶ 128–29.

Because Connell and JnoBaptiste have adequately alleged fraudulent misrepresentation claims, Defendants' motion to dismiss their fraudulent misrepresentation claims based on statements made after the Exemption was revoked is denied.  Defendants' motion to dismiss the remaining fraudulent misrepresentation claims is granted.

### 2.  Fraudulent Concealment Claims

As to the fraud claim based on the concealment of the fact that the Exemption could be revoked, New York law provides that "such a cause of action will lie only where the defendant had a duty to disclose."  *Austin v. Albany L. Sch. Of Union Univ.*, 957 N.Y.S.2d 833, 843 (N.Y. Sup. Ct. 2013) (internal quotation marks and citation omitted).  A duty arises when a fiduciary relationship exists.  *Paolucci v. Mauro*, 903 N.Y.S.2d 584, 586–87 (3d Dep't 2010).  Ordinarily, a "typical student-university relationship does not, *without more*, establish a fiduciary relationship between student and university."  *Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 499 (S.D.N.Y. 2023) (citation omitted).  *See also Annabi v. N.Y. Univ.*, No. 22-CV-3795, 2023 WL 6393422, at *15 (S.D.N.Y. Sept. 29, 2023) (noting that "[c]ourts in this circuit have held that institutes of higher education generally do not owe fiduciary duties to their students"); *Sweeney v. Columbia Univ.*, 704 N.Y.S.2d 617, 618 (2d Dep't 2000).  A school's relationship with prospective students is even more attenuated.  When there is no fiduciary relationship, a duty can still arise if "(1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; or (2) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995) (cleaned up).

Plaintiffs contend that there was a duty to disclose the fact that the Exemption could be revoked because Capella "made partial or ambiguous statements"; specifically, Defendants disclosed that the Exemption allowed PsyD students to fulfill the required clinical training at New York State-funded training sites but failed to disclose that the Exemption was revocable. Pl. Opp. at 22–23.  Plaintiffs also assert that Defendants had a duty to disclose because Defendants are "sophisticated entities" with "superior knowledge and experience in interpreting and following education regulations."  *Id.* at 23.

The facts here do not trigger a duty to disclose the possibility that the Exemption could be revoked for the same reason that Plaintiffs' GBL claims fail – that fact was publicly available information about a state law that was not "peculiarly within" Defendant's knowledge.  *Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989).  The fact that Defendants disclosed that Plaintiffs' clinical training must be performed at a state-funded location did not generate a duty to disclose the revocability of the law that allowed students of unaccredited schools to participate in clinical training in New York.

Plaintiffs rely on *Innovative Design & Bldg. Servs., LLC v. Arch Ins. Co.*, for the proposition that where a party makes "a partial or ambiguous statement" about a fact, that party "cannot give only half of the truth."  2014 WL 4770098, at *8.  In that case, the court held that a letter that gave a false impression regarding the duration of a business relationship triggered a duty to disclose.  *See id.*  But that case dealt with a partial disclosure of a non-public fact in a business transaction.  Here, the purported partial disclosure is a publicly available state statute. Plaintiffs cite no cases that impose a duty to disclose information that is a matter of public record.  Similarly, prior to revocation, Defendants did not have "superior knowledge" regarding the Exemption; the FAC does not allege any facts suggesting that Defendants predicted or knew that the state legislature would revoke the Exemption.  *See Austin*, 957 N.Y.S.2d at 844.

Plaintiffs Connell and JnoBaptiste have alleged facts, however, from which the Court can infer at the motion to dismiss stage that Defendants had a duty, between the revocation of the Exemption on June 24, 2021 and April 6, 2023, when Defendants finally informed Plaintiffs that they could no longer continue their practicums and internships in New York, to disclose revocation of the Exemption.  Within that defined period, the FAC has alleged facts from which the Court can reasonably infer that Defendants "possesse[d] superior knowledge" and knew their students were "acting on the basis of mistaken knowledge."  *See Brass*, 987 F.2d at 150. Because the Exemption was critical to Capella's ability to offer PsyD training in New York, it is reasonable to infer that Defendants were well aware that the Legislature had revoked the Exemption, at least by the date on which the Legislature did so.  Regardless of Defendants' disclaimers and the waivers that students signed acknowledging that they had reviewed state licensing requirements, it is reasonable to infer that Defendants knew that their students were relying on the misrepresentation that Defendants had made that their students would be able to complete their clinical education in New York, even though Defendants knew their students' actual ability to do so was subject to a ticking clock that they could not beat.

In short, as to Connell and JnoBaptiste, the FAC barely pleads facts adequate to support fraudulent concealment claims as to Defendants' actions after June 24, 2021.  Because the remaining Plaintiffs have not pled their fraudulent concealment claim with the requisite particularity, their claims are dismissed.

### C.  Plaintiffs' Negligent Misrepresentation Claim

Count V of the FAC asserts a claim for negligent misrepresentation.  FAC ¶¶ 184–90.  To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that [it] should have known was incorrect; (3) the

information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (citation omitted).  Additionally, a plaintiff "must have relied on [the] representations prior to incurring any alleged harm." *Basso v. N.Y. Univ.*, No. 16-CV-7295, 2020 WL 7027589, at *14 (S.D.N.Y. Nov. 30, 2020) (citations omitted).

Plaintiffs fail to state a claim for negligent misrepresentation.  Plaintiffs allege that Defendants negligently misrepresented that Plaintiffs could complete their clinical training in New York and failed to disclose the fact that the Exemption could be revoked.  FAC ¶ 185.  This claim fails due to the absence of a "special relationship."  There is potential liability for negligent misrepresentation "only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Annabi*, 2023 WL 6393422, at *17 (citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)).  Courts have routinely found that a university holds no special relationship with its students. *See Salvador v. Touro Coll.*, 27 N.Y.S.3d 44, 48–49 (1st Dep't 2016) (granting a motion to dismiss a negligent misrepresentation claim because of a lack of a special relationship between the student and law school); *Gomez-Jimenez v. N.Y. L. Sch.*, 956 N.Y.S.2d 54, 60 (1st Dep't 2012) (dismissing a negligent misrepresentation claim based on a law school's alleged fraudulent concealment of post-graduate employment statistics because of a lack of a special relationship with prospective students).

Plaintiffs' claim is also barred by the economic loss doctrine; a plaintiff who brings a negligent misrepresentation claim and has "suffered economic loss, but not personal or property injury," may not recover in tort if the damages are the type that can be remediated in contract. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citation omitted).

*See also Computech Int'l, Inc. v. Compaq Comput. Corp.*, No. 02–CV–2628, 2004 WL 1126320, at *10 (S.D.N.Y. May 21, 2004) ("[T]he general rule under New York law is that economic loss is not recoverable under a theory of negligence or strict liability.").  Plaintiffs only look to recover damages and have not claimed either property damage or physical injury.  Accordingly, Count V is dismissed.

## IV.    Leave to Amend is Granted in Part

Plaintiffs request, in the alternative, leave to amend the Complaint.  Pl. Opp. at 28. Although leave to amend should generally be "freely give[n]," Fed. R. Civ. P. 15(a)(2), it can be denied "when amendment would be futile." *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citation omitted).  District courts have "broad discretion in determining whether to grant leave to amend." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

Plaintiffs have already amended the Complaint once, in response to Defendants' prior motion to dismiss. *See generally* FAC.  The FAC added another named Plaintiff, Rami Yazar; Defendants note that they have no record of anyone by that name ever attending or applying to Capella.  Defs. Mem. at 3 n.2, Dkt. 35.

Although Plaintiffs have given no indication that they have additional facts that will cure the pleading deficiencies that have been identified above, it seems possible that Plaintiffs other than Connell and JnoBaptiste can state a fraud claim based on fraudulent misrepresentation and fraudulent concealment if Capella and its faculty continued after June 24, 2021, to falsely represent to them that they could complete their education, including clinical education necessary to become a licensed psychologist, in New York.  Plaintiffs will be given one last chance to amend their complaint to state fraud claims arising after June 24, 2021, when the

Exemption was revoked.[20]  Plaintiffs' Second Amended Complaint must be filed no later than May 2, 2025.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' GBL and negligent misrepresentation claims is GRANTED.  Defendants' motion to dismiss Connell and JnoBaptiste's fraud claims is DENIED as to claimed misrepresentations made after June 24, 2021; Defendants' motion to dismiss the remaining Plaintiffs' fraud claims is GRANTED with leave to file a Second Amended Complaint.[21]  The Clerk of Court is respectfully directed to terminate the open motion at docket entry 34.

The Court previously stayed discovery pending the resolution of Defendants' motion. That stay is hereby LIFTED.  The parties are directed to consult the Undersigned's Individual Practices in Civil Cases and to confer on a Civil Case Management Plan and Scheduling Order. The Individual Practices and Civil Case Management Plan may be found on the Court's website: https://nysd.uscourts.gov/hon-valerie-e-caproni.  The parties must submit the Civil Case Management Plan by no later than May 9, 2025.

---

[20]    Leave to amend is denied as to the GBL and negligent misrepresentation claims.

[21]    The Undersigned's Individual Rule 4(E)(i) requires Plaintiffs to file a redlined version of the amended pleading comparing the revisions made to the prior version of the pleading.

If the parties are interested in a settlement conference, the Court can, at any time, upon a joint request enter a referral to Magistrate Judge Willis.

**SO ORDERED.**

**Date:  March 27, 2025**
     **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**